May it please the Court, my name is Peter Tomeo, and I represent the defendant appellant Mr. De Los Santos. Your Honor, in this case, the issue is whether there was sufficient evidence to show that the defendant committed aggravated identity theft. Namely, whether he knowingly used the PII, personal identifying information, of a real person to commit a crime. And in this case, there simply was no such evidence. There certainly wasn't any direct evidence. There was no one who testified that he, Mr. De Los Santos, created or used the personal identifying information of real people in order to obtain the cell phones that they were obtaining in this case. What about all the witness, the victims? Well, that, Your Honor, had to do with the account itself. So the accounts are owned by real people. Yes, so why is that? I thought the government's theory was that the account numbers, the account was the personal identifying information that was stolen. And, Your Honor, that was their theory, but that theory is fallacious. That is not a, that is not supported by law. The Supreme Court last year in Dubin v. United States, which we all cited, dealt with that exact issue. They said, look, if you're going to apply that to all aggravated identity theft cases, then it makes no sense. And every Melfort case would, by definition, become an identity theft case. In its concurrence, Justice Gorsuch points out that it makes, that logic makes 1028A so vague it shouldn't be law. It should be unconstitutional. Well, you could have identity theft without it being a real person. You can have someone create fake accounts, presumably. But when, in this case, not only were the accounts of real people, which you concede, and the evidence was that, I saw in your brief. Yes. But also, early on, your client was using, his name was being used, not a fake ID. Early on in the scheme, they were actually using their real identity, allegedly, to go in and get phones. Including, what, 25 accounts that your client's name was added as an additional user in order to obtain phones. So why wouldn't that be enough? Assuming your premise is correct, that even the fake IDs, even the so-called authorized users, have to be real people, why wasn't it enough early on in the scheme that his own identity was used? Well, it certainly wouldn't be a crime for him to use his own identity. It wouldn't be a violation of the aggravated identity theft. He wasn't stealing his own identity. So then, under your theory, if you use a fake ID, it's not a crime. It's not an aggravated theft. But if you use a real ID of a person to get phones, then that's not a crime itself? You're saying that if I go in and use my own identity to obtain, falsely obtain a phone, under somebody else's real account, that's not a crime? It's a crime, but it's a fraud. That would be a mail fraud or a conspiracy to commit mail fraud. It would not be aggravated identity theft. What do you do about— And that's exactly— Well, I was going to say, what do you do about the testimony from the cooperating witness and the lead investigator who said that in order for the whole scheme to work, they have to have accounts of real people, right? Because they had the evidence of the credit, and they add themselves as authorized user. But in order to get—why is that not enough? Because, Your Honor, that, again, distinguishes between fraud and aggravated identity theft. They aren't using the identity of the account holder to create the authorized user. Their own witness, the investigator who came from AT&T, Anna Fredericks, she says they could hack into it. Right. They don't have to have real people. They can use malware to get in. No, well, didn't they say that they often need the first and last name? They need to be able to have the address. They need to be able to have the date of birth in order to be able to figure out who had good credit so that they can add themselves as an authorized user for? Well, Your Honor, the evidence doesn't support that. That was pointed out as a theory, but it wasn't tied to Mr. Davis. But the jury heard it, right? They heard from both the cooperating witness and the AT&T witness who explained a scheme that said they needed to get access to a real person's account, which means at the very least they needed the person's name, address, and for their account number, and then they added themselves as authorized users. Your Honor, I think you're misreading the record respectfully. Okay, tell me. Mr. Benitez never said that. I mean, I dealt with that in the reply brief. I went to the exact pages that they cited, and I pointed out in detail how he doesn't say anything like that. Mr. Benitez had no clue what was going on. He was not working at that kind of level. He didn't have that kind of sophistication. And certainly he never testifies to Mr. De Los Santos ever told him that. Okay, well, what about the victim statements then? The victim statements? I mean, the victims who went and testified, there were three of them, right? Yes. And they were real people because they were appearing in court. Yes. And they at the very least needed their names, right, and their account number. But the witnesses that the government presented, the investigators from Verizon, from AT&T, said you didn't need that. You could get in there with malware. Excuse me. Let me try and clarify this to make sure I understand. What you're saying is that hypothetically, schemers of this sort could figure out a way of hacking into, who is this, Verizon or AT&T? Well, those are two of them. Those companies. Both of them. Could hack into their computer systems and create what appeared to the telephone company in question as real accounts, but that were not, in fact, real accounts. And then they could, then the conspirators could use those fake accounts, hypothetically, to add telephones to the faked accounts. No, I think I must be speaking precisely enough, Your Honor. I'm not saying that they could create false accounts. I'm saying they could create authorized users on real accounts, and they didn't need what Judge Perez was saying. But that seems to me to be very far afield from what actually happened here. There's no evidence that any of these individuals added authorized users to accounts by computer hacking and then went into the store and said, I'm the guy who was added to the account. Please give me a phone. There was no testimony, Your Honor, as to how those authorized users were created. That's why they put on their investigators. That's why they put on Anna Fredericks and Mr. McDonald, to testify as to generally how it could be done. But didn't Benitez, as Judge Perez was asking you, didn't Benitez testify that Adrian Beard, and then he also said your client later on, was adding you as an authorized user to other people's accounts? He says yes. That's at page 277 of the record during Benitez's testimony. He's asked about how he would go in, how many phones he would get. And then he's asked, you said that the person whose accounts you were using would be responsible for the rest. He was talking about sometimes they would have to put a small deposit. Did you intend to actually pay those people what they owed for the rest of the phones? Answer, no, sir. I mean, he's describing a scheme involving him going in with false identities and claiming to have been added as an authorized user on real accounts, which you concede are real accounts, and then buying up to three, four phones on the credit on those accounts. How is that not enough circumstantial evidence, which the jury's instructed, for the jury to conclude that your client, given his level, given his involvement, given his own real identity used early on, that he understood this was the scheme, using real people's accounts, adding initially real himself, later on others pretending to be fake people, to get phones, how does that not satisfy the aggravated identity theft? Because when he's using his own identity, when he's using a fictitious identity, he's not engaging in aggravated identity. So let me ask you this question. If someone creates a fake identity and they walk into a bank because they have someone's check and they reproduce a check using that check number, that person's, or their own signature, and they withdraw money from a bank account on a fraudulent check, is that, from a real person's account, is that not aggravated identity theft? Without, in your scenario, I believe the real person's name was used to create the check. No, no. Aren't they to make it a check? No. They just use the real person's account number and they create it. They just walk into a bank and they go to the ATM and they plug in a real account number. Right. They put in a fake person, pay two, and they go in and they cash a check on a real person's account. Is that aggravated identity theft? In the scenario you had, they did not use the identity of the individual. What they did was they did the real individual's account. I steal someone's check. Yes. I write a check to myself. Right. Okay? But a fake ID. It's not really me. I'm using a fake license, a fake name, but I write this check to myself and I use the person's signature check and I go to the bank and I cash it. I'm not using my own identity, but I wrote a check out to a fictitious person that I have fake ID for. Is that not aggravated theft when it's based on a real account, a real person's account? It's aggravated identity theft when the real person's signature is added to the check. The fact that it's drawn from the account, if there was a way to not use that person's signature and get it in some other way, that's why I was using the ATM example, then that would not be aggravated identity theft. It would simply be theft. Well, when you're saying, if there was another way of getting into the account, it seems to me that the point that, I don't know if anyone's confused by me, but the issue here is not whether a real person's account was used. I thought that was proven and that's conceded. The question is whether the defendant, there's enough evidence that the defendant knew that it was real person's accounts, right? No, the issue is whether the person knew that he was using somebody's personal identity. Yes, but they didn't get it, he didn't go in and pretend to be Peter Tamayo. No, no, no. We all understand that. We all understand that he went in pretending to be a totally fictitious person. Right. And that, there is no such person as that for that person's identity to be stolen. The government's theory, I think we started out on this on the very first question, is that that's not their theory that that's whose identity was stolen. Their theory is the identity that was stolen was that of the person whose real account it was. And that's where they're legally wrong. Well, wait. It's a matter of law and order. This is, so really this is not a sufficiency question. It's not about whether there was enough evidence to prove, or maybe this is part of your argument, but the point you're making now is not that there was insufficient evidence to show that your client knew that they were using a real person's telephone account. Your argument is that as a matter of law, even if he did know that, and even if that's what they were doing, that is not aggravated identity theft. Exactly, because they're charged with using the false identification to access the account, not with accessing the account that belongs to a real person. Wait a minute, but wouldn't that be impersonation fraud as opposed to aggravated identity theft? Exactly. I mean, I thought the argument you were making was that they didn't, he didn't have specific snippets of data that he knew belonged to real people. He was just hijacking the account because of malware. Is that? No, I'm saying he was hijacking the account. But the way he was hijacking the account, there was not sufficient evidence to show that he was using personal identifying information to hijack the account. So then actually there's a question then is how does one with malware get into an account? I was under the impression that what the malware did was allow the malware to capture identifying information that would then get them into the account. We never got, they never presented evidence to that sufficient detail. So there's no evidence from which a jury could draw that conclusion. But the malware is basically, isn't the malware whole story a red herring? Because no one suggests that that's what these people actually did. I thought the only relevance of that was that it was argued to the jury that this, that the possibility of doing that created a reasonable doubt about whether your client understood that the scheme was affected by using real people's accounts and real people's identifying information about those accounts. My client, there's no evidence my client had any idea how this was all done. He only knew it worked. And he was given it because. That's his story. Their story is of course he understood it because this is how this scheme must have worked and he was high enough to know that. And that sounds to me like a jury question. Well, Your Honor, this is where we get into the difference between a reasonable inference and a reasonable speculation. That's speculation. That he must have known that. I mean, there's no. So do I now understand you correctly that you have two arguments here really, that there are two problems with the government's theory. One problem is they did not prove beyond a reasonable doubt that your client knew the way this scheme actually is conceded to have worked, which is by using real people's accounts. And the second theory is that, and even if they did prove that, that would not be aggravated identity theft under Dubin. Yes. Okay. Thank you, Your Honor. Appreciate it. Government? It would help me if you went through what evidence you think the jury heard. Good morning and may it please the court. My name is Edward C. Robinson, Jr. I represent the United States in this appeal and I represented the United States in the court below. The court should affirm the judgment there was overwhelming evidence that De Los Santos knew that the personal identification information that was used to fraudulently obtain phones belonged to real people. As to the evidence, there were phone records that show that De Los Santos was added as an authorized user to over 25 accounts. Okay, but that, they could be 25 fake accounts, right? I think we need to focus. Unless we don't understand your theory, you need to tell me what the jury heard that suggested the people whose accounts were hijacked and had people authorized users added on. How did the jury know that they were real people? How does the jury hear that he knew that it was real people? The accounts that he was adding on, those are real accounts for real customers. I think the argument that he's making is a red herring. When De Los Santos goes into a phone store, shows his real ID, shows that he's an authorized user, he has to identify the customer account. Whether that's the person's name or the account number, the jury's entitled to make that inference. That is a means of identification. Okay, and how does he know that that account number is not a fake account? It is a real account. He wouldn't have been able to obtain the phones. No, no, no, no. How did he know that the account that he provided in the store was a real person, as opposed to a fake account created for a fake person? Well, first off, Benitez testified that he was... Okay, so one is Benitez's testimony. Yes. Please, I'm asking for an inventory of what they heard. Benitez's testimony. There was the phone records that showed he was added as an authorized user. No, no, no. Okay, the phone records don't help, right? Because those could have been fake accounts, right? So, no phone records. What else? I don't want to go back to the phone records. These phone companies have real customers with real accounts. So, the idea that the phone companies had fake accounts, the way the scheme works is you go into the phone store, you put a small endowment payment on the phone, and you bill the rest to the rest of the customer. That's how you got over $19 million worth of phone devices, and that's why... Okay, so what I'm hearing you say is that another piece of evidence was the way the AT&T investigator explained how the scheme worked. That's correct. So, you've got Benitez's testimony, you've got the AT&T investigator. What else did the jury hear that made it very obvious to Mr. De Los Santos that those were real people's, real people were the account holders that he was hijacking? I would also add the Verizon investigator's testimony, and I would also add the victim's testimony as well. All of that shows that the way it did work was by using real customer accounts. I take it that what you're saying is to perform this feat of hackery that is hypothetically being raised in this situation as a way that this scheme could work at an industrial scale, you would have to be creating fake accounts that somehow never generate... You'd have to also generate phone bills, I assume, for those accounts, because if Verizon looks and sees that this is an account that seems to exist, but no one ever made any calls on that account, right? You'd have to actually generate backup documents that would make it appear to Verizon that this is a real account, and you'd have to do that at this industrial scale, right? And this is not one person doing this once. This is a major scheme with lots of people going out and getting these phones. And it's happening over a four- or five-year period. And you would have to be creating for this hypothetical hackery scheme to work. You would have to be generating enough fake records that phone companies would look at it and say, oh, that's Jerry Lynch. He's a real person. He's got a phone bill and a phone account with us, and he's been with us for years, and it's been generating accounts. And, okay, now this fake ID person is coming in and says, I'm on that account. Give me a phone, right? They would have to have that kind of level of information. And that seems sufficiently implausible that a reasonable jury could conclude that anybody doing this scheme has to know that it works with real people. That's the relevance of all the phone records and all the stuff about how it actually works, plus Benitez, who basically is saying, I knew that this was how it works, and I'm a low-level schnook. Right, and I would add it's very improbable or not credible that Benitez, right, who's the person going in and pretending to be the customer obtaining the phones, that the person who hired him, that De Los Santos, the person who funded the trips, picked the stores, pervaded the identification, didn't know that the personal identifier information belonged to real people. I read your closing argument. That's not evidence. But obviously the state's theory of the case was that the defendant participated in a scheme to defraud, to lie, to get other people's money or property, like phones, and then as to count three, to use real people's identities, their names, their birth dates, their addresses, to commit mail fraud scheme charged in count one and two. So what you're saying is that there was testimony from the cell phone companies that these phones that were being obtained by falsely claiming to be an approved account, authorized account user by adding an account, were real people's accounts. They weren't fake accounts. And you understand your opponent's argument seems to be that whoever was, and I think this was out of the country, whoever was supplying this information, was actually going into phone companies with malware and creating fake accounts, fake people, and then adding additional fake people as account users. And you're saying the testimony from the cell phone companies was that the fraud scheme involved real accounts. That's correct, too. I don't think there was any evidence that really supported the theory that... Well, they'd have to create a lot of accounts to amount to $19 million fraud. Right, just as our colleague said. This is the reasonable doubt argument that the government hasn't disproven the theory that it was actually green men from Mars who crept in and did all the badness and framed the defendant. Or at least he could have thought that's how the scheme worked, right? And you're saying that's what the equivalent of this is, is the theory that some mastermind genius had figured out a way to do this using fake accounts rather than real accounts, even though, in fact, this scheme was proved beyond a reasonable doubt to have been done with real accounts. Correct, that's correct. Can I ask you to distinguish Dubin? Because Mr. Tomeo's other argument is that, okay, assume we disagree with him and agree with you about the sufficiency of the evidence as to whether De Los Santos knew that the accounts that his people were getting themselves added to were real accounts with real identifying information, that that still, under Dubin, is the kind of incidental anytime you defraud somebody or somehow committing identity fraud. How is this case different from Dubin? The comic here falls squarely within Dubin. I mean, this is a crime that involves fraud and deceit and entails using the means of identification here in a fraudulent or deceitful manner. And the means of identification, I think the statute in 18 U.S.C. 1028-D7 is quite broad. It includes any name or number. Yeah, but the problem is wasn't Dubin a case where you had a Medicaid or a Medicare account being abused in not too dissimilar way, at least as Mr. Tomeo's argument, from how the Verizon accounts were being used here? In Dubin, the patient information was incidental here. It wasn't critical to fraud. For the fraud here, the way it works is that you need to, when you go in and you purchase a phone fraudulently, you have to identify the customer or the account there, which you can only do by stealing the personal identifiable information. So the fraud here, which involves obtaining phones in like a deceitful manner, the identity here was critical for the criminal conduct to occur here. The essence of the fraud in Dubin was just submitting bills for sessions that didn't occur. Right? And that didn't actually adversely impact the person whose account number, the patient who was identified. But here you're saying because the victim really is the account holder whose identity is essential to the scheme, that's why this is different. That's correct. I would also add here like the harm to the victim, obviously the victim receives a bill for a phone they didn't purchase and they call the phone company. The phone company actually ends up bearing the loss. But the actual experience that the victim goes through is a harm that kind of goes to the heart of identity theft. I think we understand your argument. Thank you so much. Thank you, Your Honor. Mr. Speier, you're reserved three minutes. Thank you, Your Honor. I don't want to get lost in the little green men issue because the issue is that we don't know and the government did not present evidence as to how malware could be used to create deauthorized users. No, because it's your theory that it's malware. It's not their theory that it's malware. Their theory has nothing to do with malware. Your argument is that because you have a theory, this was presented to the jury, wasn't it, or was it not? I don't think in the way we're arguing it was, no, Your Honor. I think the issue that was presented to the jury was whether Mr. de Losantos, we're not talking about Mr. Baird, we're not talking about all these other people. Remember, Mr. de Losantos has only got one more thing to say. Mr. de Losantos, stop and go on with the sentence from there. He has not knowingly used the personal identifying information of a real person to create this. Exactly, but your theory as to how it could even be possible that he did not know that is the malware theory. No. No. All he knows is he's got an identity, and when he uses his own identity, obviously he's not stealing his own identity. No, but that's the red herring. It's not his identity. It's not a fake human being that he created, an ID, to be added to the account, which is a lot smarter than using his own name. Yes. Those aren't the false identities. The false identity in the government's theory is the account. Yes, and that doesn't – and that's – I understand you have your Dubin theory. That's my Dubin theory. But you're – are you not also contending that your client was not proven beyond a reasonable doubt to have known that there were real accounts? Oh, you misunderstood my argument. Yes, I did. Yes, I understand, and I'll take responsibility, Judge. I'm not saying he didn't know that these were real accounts. The issue is whether he used the PI, the personal identifying information. So let me ask, what do you define as PI? Is a name not enough? Yes, but it's not the name of the account holder. It's the name of the authorized user. No, but that's not the government's theory. They've disavowed that altogether. Well, when they disavow that, they're in violation of Dubin. That's my Dubin theory. That's my principle theory. Okay, so Dubin is what this case is about. Yes. Okay, so it's not at all about the sufficiency of the evidence that – from which the jury could conclude that he knew that the accounts belonged to real people. Your theory is even if he didn't know that, it's not identity theft C. Dubin.  No, I understand what you're saying. That the fake ID that he handed in belonged to a real person. That's not their theory. Their theory is he used a fake ID of a fake person, and he also used the account information of a real person. And your Dubin theory is that's not good enough. I understand that. But I'm not sure that I understand why there is a sufficiency question about his state of mind as to how the scheme was carried out. Because, Your Honor, he had to have – he had to know that the information, the identity information he was using, which had to be the identity of the authorized user, was – belonged to a real person other than himself. And the only reason he would not know that is because, hypothetically, this scheme could have been created by using fake accounts that had been somehow created by some form of computer ad. No, he also could have known – he also – it could have happened that he was given someone else's – he was given Mr. Benitez's identity. And Mr. Benitez gave permission as a member of the scheme to use his identity. We don't know when Mr. – we know that Mr. De Los Santos – So the theory is that maybe he thought – maybe De Los Santos thought that Peter Tomeo, whose account is being used and is going to be charged for this phone, allowed that to happen and then – and was a co-conspirator. No, you keep going to the owner of the account, and I'm saying that under the – the elements of the offense – and this is where the sufficiency comes in – the elements of the offense go to his knowledge as to the identity of the authorized user, not the account holder. And if it goes to the account holder, then respectfully that would be – That's the Dubin – that's the Dubin issue. Right. But then there is no separate issue as to what he knew about the fact that it was a real person's account. Yes, Your Honor, but I don't see under Dubin how they could be – I get that. I get that. But that is a legal question as to whether the scheme that the government outlined was a crime or not a crime. That's a different question than the question of whether there was sufficient evidence that De Los Santos understood that there was a real person whose account information was being used. And it sounds to me like you're telling me you are not arguing that issue. You are not arguing that there was insufficient evidence to demonstrate that Mr. De Los Santos understood that the way that – the driving engine of this scheme is that there are real people with real Verizon accounts whose account information is being used. Your theory is if that's what he understood, that's not a crime. Is that wrong or right? The distinction that I'm making is between account information and personal identifying information. The fact that there's an account belonging to a real person does not satisfy the burden that they had. But isn't he using the account information when he accesses – when he tells Verizon, this is the account I'm going for, Peter Tomeo's account? No, when my son goes into the Verizon store with his phone on my account, he identifies himself as Robert Tomeo and he has his ID for that. That's all he needs to do. He doesn't need to show – and Verizon then looks at my account and they see that Peter Tomeo owns an account and he has authorized Robert Tomeo to be a user of the account. That's the end of it. Now, I'm saying under Dubin, that's not fraud. The fact that – and that's what I'm saying is that there's no reason that Mr. De Los Santos had to believe that the personal identifying information of the authorized user was fraudulent.